After a jury trial in the District Court, a jury convicted the defendant, Edgardo Rodriguez, of possession of a Class B controlled substance, Suboxone. G. L. c. 94C, § 34. On direct appeal, the defendant argues that he was deprived of his right to confront the witnesses against him in violation of the Sixth Amendment to the United States Constitution because Paul Eyerle, a supervisor in the State Police Crime Laboratory's (crime lab) drug unit, testified regarding drug evidence analyzed by a chemist who no longer worked at the crime lab (original chemist). Specifically, the defendant argues that it was error for Eyerle to mention that he reviewed the original chemist's certificate of analysis as part of his preparation for trial. Because Eyerle testified as to his own opinion about the composition of the substances, the original chemist's certificate of analysis was not introduced in evidence or her opinion stated for the jury, and Eyerle was subject to cross-examination, we conclude that the defendant was not deprived of his right of confrontation.
An expert witness's independent opinion is admissible notwithstanding the expert's reliance on test results obtained by a nontestifying analyst. Commonwealth v. Greineder, 464 Mass. 580, 582, 595-596 (2013). The expert may not testify, on direct examination, as to the "specific information on which he or she relied" in reaching an independent opinion, because such testimony would be hearsay. Id. at 583, citing Commonwealth v. McNickles, 434 Mass. 839, 857 (2001).[2] See Mass. G. Evid. § 705 (2017). Allowing an expert's opinion while holding inadmissible the hearsay basis for that opinion protects a criminal defendant's right of confrontation because "the declarant of the opinion is testifying at trial" and is subject to cross-examination. Greineder, supra at 584, quoting from Commonwealth v. Barbosa, 457 Mass. 773, 783-784 (2010).
We conclude that Eyerle's testimony did not exceed the bounds set by Greineder. On direct examination, Eyerle testified that he reviewed, and approved, the original chemist's work, which included her matrix notes, raw data, and the certificate of analysis, "for administrative and technical accuracy." He did not testify as to what the results of her tests were. He then testified that, in preparation for trial, he reviewed "the matrix notes, certificate analysis and the raw data" and that he "look[ed] at the comparisons that were made by the original analyst and conclusions and then determine[d] whether or not what [his] conclusions would be for the same data." Finally, in response to the prosecutor's question, he stated that in his opinion the substances tested were Suboxone.
We note that although Eyerle testified that he reviewed the original chemist's certificate of analysis, he did not testify as to her conclusions. See Barbosa, supra at 783-784. He also did not testify as to the results of any of the tests performed by the original chemist, ibr.US_Case_Law.Schema.Case_Body:v1">id. at 784, nor did he say that his conclusions matched hers. Id. at 786. While it is possible that the jury could have inferred that Eyerle's conclusions matched the original chemist's, such an inference does not render his testimony inadmissible. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 788 (risk that jury may infer facts not in evidence based on expert's opinion not reason to declare opinion inadmissible absent substantial risk of unfair prejudice).[3]
The defendant's argument is not strengthened by Officer Thomas's testimony. The prosecutor asked Thomas what the process was for retrieving evidence from the crime lab. He testified that he would go to the crime lab, give them a form, and receive a package in a sealed bag and a "certificate that's [sic] says exactly what it was." First, we note that he said "certificate" and not "certificate of analysis," which is somewhat ambiguous, because it could mean either a certificate that tells the police what the substance is, or a certificate that tells the police that it is the same evidence that was given to the crime lab. Second, although Thomas was asked about what occurred when he retrieved the evidence in this case, his answer appears to give the general process for retrieving evidence from the crime lab and not what specifically happened in this case. The prosecutor's next question: "And was there a certificate returned with these items when you picked them up from the State Police Crime Lab?" appears to confirm this interpretation. Before Thomas can answer, defense counsel objects, and after a conversation at sidebar the prosecutor rephrases her question. Thus, it does not appear that the jury heard from Thomas that the evidence in this case was received from the crime lab with the original chemist's certificate of analysis telling the police "exactly what it was." While the jury did later hear from Eyerle that there was a certificate of analysis in the file, and may have connected that to Thomas's earlier testimony, that is not what Greineder prohibits.
Assuming arguendo that Eyerle's reference to the original chemist's certificate was error, it was harmless beyond a reasonable doubt. See Commonwealth v. Vasquez, 456 Mass. 350, 352 (2010) (preserved constitutional errors reviewed under "harmless beyond a reasonable doubt" standard). Under that standard, we look to determine whether the other evidence as to the chemical composition of the substances was so "overwhelming" as to "nullify any effect" the reference to the certificate may have had on establishing the element of the crime that the substances were Suboxone. Id. at 363. We first note that prior to his hospital admission the defendant told Officer Thomas that he had ingested Suboxone. After his hospital stay the defendant confirmed this statement in an interview with Officer Hamilton. In addition, Eyerle testified to his expertise in chemical analysis of unknown substances with an emphasis on drug analysis, and the judge qualified him as an expert. Setting aside Eyerle's reference to the certificate, he testified that he reviewed the original chemist's matrix notes and the raw data of the tests she performed and determined what his conclusions would be for the same data. Based on that independent review, he concluded that the substances were Suboxone. Considering the entirety of Eyerle's testimony and the other evidence presented, we are satisfied beyond a reasonable doubt that Eyerle's two brief references to the original chemist's certificate of analysis did not have an effect on the jury and did not contribute to the jury's verdict. See Commonwealth v. Tyree, 455 Mass. 676, 701-702 (2010). Contrast Vasquez, supra at 363-367 (error not harmless beyond reasonable doubt where erroneously admitted drug certificates were sole evidence that seized substance was cocaine).
Judgment affirmed.

On cross-examination, the expert may be required to disclose the underlying facts or data on which the expert's opinion is based. See Commonwealth v. Nardi, 452 Mass. 379, 387-395 (2008).

We also note that the judge instructed the jurors on expert witness testimony according to the standard model jury instruction, telling them, "because a particular witness has specialized training and experience in his field does not put that witness on a higher level than any other witness, and ... [y]ou're to treat the so-called expert witness just like you would treat any other witness.... [I]t's completely up to you to decide whether you accept the testimony of the expert witness, including the opinions the witness gave."